IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA KNEPPER, #A4007549, | CIVIL NO. 24-00499 DKW-KJM |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| vs. | |
| JOSHUA MUELLER, *et al.*, | |
| Defendants. | |

Before the Court is pro se Plaintiff Joshua Knepper's Initial Complaint for Damages.  ECF No. 1.  In the Complaint, Knepper alleges that the City and County of Honolulu (City) and officers of the Honolulu Police Department (HPD) violated his rights under the U.S. Constitution and state law based on an encounter with police on November 22, 2022.[1]  Specifically, Knepper asserts First Amendment (Count I), Fourth Amendment (Count II), Fourteenth Amendment (Count III), municipal liability (Count IV), and state law negligence (Count V) and intentional infliction of emotional distress (Count VI) claims.  Because Knepper's claims are

---

[1] The individual HPD officers named by Knepper are Joshua Mueller, Justin Endo, Kenric Pai, Seti Siave, Afalava Soli, Arnoid Ferraris, and Blanco Florand.  ECF No. 1 at PageID.1.  At various points, Knepper refers to Officer Siave as "Seti Siava."  *See, e.g.*, *id.* at PageID.3, 4, 5.  At this point, the Court will spell Officer Siave's name as it appears in the caption.  Knepper alleges that "several unidentified officers" also violated his rights.  *Id.* at PageID.1.  The individual officers are named in their individual capacities.  *See id.* at PageID.2.

unclear, including by failing to identify which Defendants are the subject of each Count, the Complaint is DISMISSED with leave to amend.  Knepper must file any amended pleading, consistent with the guidance below, on or before **March 28, 2025.**  In the alternative, Knepper may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

## **BACKGROUND**

Knepper alleges that the following events occurred at approximately 9:30 p.m. on November 22, 2022.[2]  ECF No. 1 at PageID.3–9.  While meeting a client for dinner, Knepper parked his car in a stall behind a McDonald's on Beretania Street in Honolulu.  *Id.* at PageID.3.  When Knepper went to retrieve a bag from the trunk, multiple unmarked sport utility vehicles entered the parking lot at high speed.  *Id.*  As those vehicles were stopping, Knepper closed the trunk lid and stood between the open driver's door and the passenger compartment of his car. *Id.*  The seven named HPD officers and an unspecified number of unnamed officers exited their vehicles and at least some of them pointed their weapons at Knepper.  *Id.* at PageID.3–4.

Officer Mueller was one of the officers pointing his weapon at Knepper, and he yelled, "I'm gonna knock you the fuck out!  I'm gonna knock you the fuck out!"

---

[2]These allegations are taken as true for purposes of screening only.  *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

*Id.*  When Knepper asked why he was being arrested, an unidentified officer said, "Shut the fuck up!"  *Id.*  After Knepper asked the officers to provide a "reasonable articulable suspicion" for his arrest, Officer Soli grabbed Knepper's left arm and violently yanked him away from his car.  *Id.*  Officer Soli then twisted Knepper's arm behind his back, causing "severe pain."  *Id.*  Officer Soli and another officer placed handcuffs on Knepper and sat him on a curb behind his car.  *Id.*  After Knepper yelled several times that the officers were acting illegally and cried out for someone to help him, Officer Soli and another officer struck Knepper and ordered him to "shut the fuck up!"  *Id.*

Officers Mueller, Endo, Siave, and other unnamed officers opened the driver's door and a rear passenger door of Knepper's car, "pulled" a passenger from the car, and began looking around the car's interior using lights.  *Id.*  When Knepper attempted to stand, yelled "illegal search," and asked for someone to help him, Officer Soli and another officer twisted Knepper's arms up and behind him by raising the handcuffs, injuring Knepper's shoulder in the process.  *Id.* at PageID.4– 5.  Officer Mueller and other unnamed officers produced a closed black leather bag, purportedly from under the driver's seat of Knepper's car.  *Id.* at PageID.5.  Officer Mueller opened the bag, discovering a handgun.  *Id.*

While Knepper was being transported to the police station, Officers Mueller, Endo, Pai, and other unnamed officers returned the handgun back to the black

3

leather bag, placed the bag into Knepper's car, took photographs, and had the car towed. *Id.* The named and unnamed officers then "falsified crime and arrest reports" by "fabricating justifications for the excessive force, unlawful detention[,] and illegal search and seizure of [Knepper's] lawfully owned property." *Id.*

According to Knepper, throughout the incident, he was not armed, he did not pose a threat to the officers on the scene, and he never attempted to flee. *Id.*

Knepper commenced this lawsuit by depositing the Complaint in the prison mail system on or before November 12, 2024. *See id.* at PageID.20; ECF No. 1-1 at PageID.23. In the Complaint, Knepper alleges that his First Amendment (Count I), Fourth Amendment (Count II), and Fourteenth Amendment (Count III) rights were violated.[3] *Id.* at PageID.9–12. Knepper also asserts municipal liability claims against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count IV), and state law negligence (Count V) and intentional infliction of emotional distress (Count VI) claims. *Id.* at PageID.12–20. Knepper seeks damages, fees, and costs. The Court granted Knepper in forma pauperis status on February 11, 2025. ECF No. 9.

---

[3]To the extent Knepper also refers to the Fifth Amendment, its protections have no apparent application here. *See Reno v. Nielson*, 424 F. Supp. 3d 1045, 1058 (D. Haw. 2019) ("Plaintiff's claims are against state rather than federal actors, and due process is applicable to state actors through the Fourteenth Amendment (not the Fifth Amendment).").

## STATUTORY SCREENING

The Court must screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a particular defendant for specific misconduct.  *See id.*

In screening a complaint, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010).  The Court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.

When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## DISCUSSION

### A.    Shotgun Pleading

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, a complaint must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Under Rule 10, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in

one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The "most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. "The next most common type . . . is a complaint . . . guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. A third type of shotgun pleading "is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322. In a fourth type of shotgun pleading, the plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. Shotgun pleadings are unacceptable. *See White v. Sacramento Police Dep't*, No. 2:21-cv-02211-JAM-DB, 2022 WL 2052596, at *3 (E.D. Cal. June 7, 2022).

Here, the Complaint is an impermissible shotgun pleading because it fails to specify in each count what each Defendant allegedly did or failed to do to violate Knepper's rights. *See* ECF No. 1 at PageID.9–20; *see also Melrose Place Holdings v. Socotra Opportunity Fund, LLC*, Case No. CV 22-01329-MWF (PDx),

2022 WL 3013226, at *5 (C.D. Cal. May 31, 2022) ("[T]he [pleading] squarely falls into the category of an impermissible shotgun pleading.  The [pleading] uses the omnibus term 'Defendants' to allege misconduct without differentiation, and each and every claim incorporates by reference all preceding paragraphs without specificity.").  The Complaint is therefore DISMISSED with leave to amend.  *See Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 4732145, at 10 (D. Ariz. Aug. 14, 2020) (dismissing shotgun pleading where "it was extremely difficult to identify which of the Defendants did what and how Plaintiffs were injured as a result, let alone what legally cognizable theory of relief Plaintiffs are articulating").

If Knepper decides to file an amended pleading, in each count he must explain: (1) the law or constitutional right Plaintiff believes was violated; (2) the name of the party who violated that law or right; (3) exactly what that party did or failed to do; (4) how that action or inaction is connected to the violation of the law or any constitutional right; and (5) the exact injury Knepper suffered as a result of that conduct.  *See Wheeler v. MicroBilt Corp.*, No. CV 15-3438-R, 2015 WL 13683632, at *1 (C.D. Cal. Dec. 10, 2015) ("A plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Rule 8(a)(2).").  In drafting any amended pleading, Knepper must consider the following legal standards.

**B.    Legal Framework for Claims Under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of law deprives another of 'rights, privileges, or immunities secured by the Constitution.'"  *Cornel v. Hawai'i*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (brackets in original).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution or United States laws, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**C.    First Amendment**

Knepper alleges in Count I that officers retaliated against him in violation of the First Amendment.  ECF No. 1 at PageID.4, 9–10.

To establish retaliation in violation of the First Amendment, an arrestee must demonstrate that the officer "deterred or chilled [the arrestee's] speech and such deterrence was a substantial or motivating factor in [the officer's] conduct."  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)).  If officers have probable cause to make an arrest, despite also having a retaliatory motive, then a retaliatory arrest claim fails.  *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)

("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

## D.    Fourth Amendment

Knepper alleges in Count II that officers violated the Fourth Amendment by using excessive force, detaining him without reasonable suspicion, searching and seizing his car, and arresting him without probable cause.  ECF No. 1 at PageID.10–11.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.

### 1.   Excessive Force

Allegations of excessive force during an investigatory stop or arrest are examined under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Villanueva v. California*, 986 F.3d 1158, 1169 (9th Cir. 2021).  Evaluating an excessive force claim proceeds in three steps.  First, courts "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (internal quotation marks omitted).  Second, courts "evaluate the government's interests by assessing the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or

attempting to escape." *Id.* Finally, courts "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.* (internal quotation marks omitted).

### 2. Reasonable Suspicion

Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a brief, investigative stop of an individual when they have reasonable suspicion that the "person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). In deciding whether this standard has been met, courts consider the "totality of the circumstances" to determine whether a detaining officer has a "particularized and objective basis" for suspecting criminal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

### 3. Vehicle Search

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). In addition, the search-incident-to-arrest exception "authorizes police to search a vehicle incident to a recent occupant's arrest . . . when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or "when it is 'reasonable to

11

believe evidence relevant to the crime of arrest might be found in the vehicle.'"

*Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).

### 4.  Arrest

"A warrantless arrest must be supported by probable cause to comport with the Fourth Amendment."  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010).  "Probable cause exists where the 'available facts suggest a fair probability that the suspect has committed a crime.'"  *Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)).

### 5.  Vehicle Seizure

"Generally, '[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018) (quoting *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017)) (alteration in original).  Pursuant to the community caretaking exception, "'police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'"  *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir.2005)).  This exception allows police to impound an arrestee's vehicle even

from a private parking lot.  *See United States v. Grigsby*, 745 F. App'x 710, 712

(9th Cir. 2018) ("We have repeatedly held that the community caretaking

exception can justify impoundment of an arrestee's vehicle from a private parking

lot to protect it from vandalism.").

### E.    Due Process

Knepper alleges in Count III that officers violated the Fourteenth

Amendment by using excessive force, detaining him, seizing his property, and

arresting him.  ECF No. 1 at PageID.11.

The Fourteenth Amendment guarantees that no state shall "deprive any

person of life, liberty, or property, without due process of law."  U.S. Const. amend

XIV, § 1.  "Where a particular Amendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of 'substantive due process,' must be

the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273

(1994) (quoting *Graham*, 490 U.S. at 395).

Any claims based on excessive force, a *Terry* stop, a seizure, or an arrest are

governed by the Fourth Amendment, not the Fourteenth Amendment.  *See*

*Palladini v. City of Milpitas*, No. C 06-00779 JW, 2009 WL 347278, at *6 (N.D.

Cal. Feb. 6, 2009) ("[F]ailure to observe the requirements of the Fourth

Amendment will not support an independent claim for a failure of due process,

particularly in [a] case, where the facts supporting each claim are identical."
(internal quotation marks and citation omitted) (send alteration in original)).

## F.    *Monell* Liability

In Count IV, Knepper alleges a municipal liability claim against the City.
In *Monell*, the Supreme Court held that a municipality could be "sued directly
under § 1983 for monetary, declaratory, or injunctive relief where . . . the action
that is alleged to be unconstitutional implements or executes a policy statement,
ordinance, regulation, or decision officially adopted and promulgated by that
body's officers" or is "visited pursuant to governmental 'custom' even though such
a custom has not received formal approval through the body's official
decisionmaking channels."  436 U.S. at 690–91.  In addition, the Supreme Court
has held that a municipality can be liable under Section 1983 for a "failure to train"
when "the failure to train amounts to deliberate indifference to the rights of persons
with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378,
388 (1989).  A municipality cannot be held liable under Section 1983 "solely
because it employs a tortfeasor—or, in other words, a municipality cannot be held
liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691
(italics omitted).

Thus, a plaintiff can allege municipal liability under Section 1983 in any of
three ways.  First, a municipality can be liable when it or a person with final

14

policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388–89. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee to commit the constitutional deprivation. *Id.* at 391; *Monell*, 436 U.S. at 694.

## G.    Negligence

Knepper asserts in Count V that officers acted negligently. ECF No. 1 at PageID.17–19. He further asserts that the City is liable either for the negligence of the officers based on a theory of respondeat superior, or because of its hiring, training, supervision, control, and retention of those officers. *Id.*

Under Hawaii law, "[i]n order to establish a defendant's liability for negligence, a plaintiff must prove (1) a duty recognized by the law that the defendant owed to the plaintiff; (2) a breach of the duty; (3) that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages." *O'Grady v. State*, 140 Hawai'i 36, 43, 398 P.3d 625, 632 (2017) (citation omitted).

"Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment." *Wong-Leong v. Hawaiian Indep. Refinery, Inc.*, 76 Haw. 433, 438, 879 P.2d 538, 543 (1994). To recover under the respondeat superior theory, a plaintiff must establish: (1) a negligent act of the employee, in other words, breach of a duty that is the legal cause of plaintiff's injury; and (2) that the negligent act was within the employee's scope of employment. *Id.* Nonjudicial government officers—and, by extension, their municipal employers—benefit from a qualified privilege: they may only be held liable in tort if they were "motivated by malice and not by an otherwise proper purpose." *Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974). Malice, according to the Hawaii Supreme Court, means "the intent, without justification or excuse, to commit a wrongful act"; the "reckless disregard of the law or of a person's legal rights"; and "ill will" and "wickedness of heart." *Awakuni v. Awana*, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007).

By contrast, to the extent Knepper seeks to sue the City for negligent hiring, training, supervision, and control of the officers, he is reminded that "negligent supervision may only be found where an employee is acting *outside* of the scope of his or her employment." *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 427, 992 P.2d 93, 122 (2000).

## H.    Intentional Infliction of Emotional Distress

In Count VI, asserts state law intentional infliction emotional distress claims. ECF No. 1 at PageID.19–20.

The elements of intentional infliction of emotional distress under Hawaii law are: (1) the conduct allegedly causing the harm was intentional or reckless; (2) the conduct was outrageous; and (3) that the conduct caused (4) extreme emotional distress to another. *Goran Pleho, LLC v. Lacy*, 144 Hawai'i 224, 238, 439 P.3d 176, 190 (2019). "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." *Enoka v. AIG Hawai'i Ins. Co., Inc.*, 109 Hawai'i 537, 559, 128 P.3d 850, 872 (2006) (internal quotation marks and citations omitted). Additionally, "[t]he question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008) (citation omitted).

To the extent Knepper alleges that the City "is liable . . . for all the acts and omissions of the . . . Defendants pursuant to the doctrine of respondeat superior and/or vicarious liability," ECF No. 1 at PageID.19, the Hawaii Supreme Court has stated that "an employer may be liable for the intentional torts of [its] employee [as] the law now imposes liability where the employee's purpose, however misguided, is wholly or in part to further the master's business." *State v. Hoshijo ex rel. White*, 102 Haw. 307, 319 n.27, 76 P.3d 550, 562 n.27 (2003) (internal quotation marks omitted) (alterations in original). "However, it is less likely that a willful tort will properly be held to be in the course of employment and that the liability of the master for such torts will naturally be more limited." *Id.* (internal quotation marks omitted).

## I.    Doe Defendants

Throughout the Complaint, Knepper refers to "several unidentified officers." *See, e.g.*, ECF No. 1 at PageID.1, 3–6.

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. This is because it is usually impossible to serve a summons and pleading on an anonymous defendant. The use of Doe Defendants is generally disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nonetheless, the use of Doe Defendants is sometimes necessary when a plaintiff cannot discover the identity of

the defendant before filing the operative pleading.  The burden of identifying and serving a defendant is, at all times, on the plaintiff—the Court will not undertake to investigate the name and identity of an unnamed defendant on plaintiff's behalf.

To the extent Knepper believes that certain unnamed officers violated his rights, he should separately identify these officers—for example, Doe 1, Doe2, etc.—and clearly state what each of them did or failed to do to violate his rights.

**J.    Intervention**

At various points in the Complaint, Knepper suggests that certain officers should have intervened to stop their colleagues.  *See* ECF No. 1 at PageID.10–11.

It is well established that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Tobias v. Arteaga*, 996 F.3d 571, 583–84 (9th Cir. 2021) (internal quotation marks omitted)).  "If an officer fails to intercede, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who performed the offending action."  *Id.* at 584 (internal quotation marks omitted). "[H]owever, officers can be held liable for failing to intercede only if they had an opportunity to intercede."  *Id.* (internal quotation marks omitted) (alteration in original).

## LEAVE TO AMEND

The Complaint, ECF No. 1, is DISMISSED with leave to amend.  Knepper must file any amended pleading on or before **March 28, 2025**.  Knepper may not expand his claims beyond those already alleged herein or add new claims, without explaining how any new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Knepper must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## CONCLUSION

(1) The Court DISMISSES the Complaint with leave to amend.

20

(2) If Knepper wants any of his claims to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **March 28, 2025**.

(3) ALTERNATIVELY, instead of filing an amended pleading, Knepper may inform the Court in writing on or before **March 28, 2025** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1).

(4) Failure to comply with these deadlines may result in AUTOMATIC DISMISSAL of this suit without further notice.

(5) The Clerk is DIRECTED to send Knepper a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: February 28, 2025 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*Joshua Knepper v. Joshua Mueller, et al.;* Civil No. 24-00499 DKW-KJM*;*
**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**